Receipt number AUSFCC-6675363

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ASKAN HOLDINGS, LTD. | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No.: 20-1870 C |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) ) |

## COMPLAINT

Plaintiff Askan Holdings, Ltd. ("Askan"), by and through undersigned counsel, pursuant to the United States Constitution, Fifth Amendment Takings Clause, alleges the following:

## PARTIES

1. Askan is a Seychelles-registered aircraft holding company whose principal place of business is in Turkey. Askan is a wholly-owned subsidiary and the dedicated holding company of Transylvania International Airlines SRL ("TIA"), a Romanian company which operates aircraft. Mr. Nizam Kucuk Akyuz, who is a citizen of the Netherlands, is TIA's director and sole shareholder. Askan is not involved with or associated with any individual, entity, or country targeted by United States economic and trade sanctions.

2. The agencies of Defendant United States of America ("Defendant") include the Office of Foreign Assets Control ("OFAC"), a federal agency within the United States Department of Treasury located at 1500 Pennsylvania Avenue, NW, Washington, DC 20220. OFAC is responsible for administering and enforcing economic and trade sanctions against

1

targeted foreign countries, regimes, and other entities. OFAC enforces the Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. Part 594, which is a set of regulations prohibiting transactions between U.S. persons and designated terrorists or individuals whose property or interests in property are blocked pursuant to 31 C.F.R. § 594.201. Andrea Gacki is the Director of the Office of Foreign Assets Control and is responsible for implementing and enforcing the GTSR.

## JURISDICTION

3. Askan seeks money damages in excess of $10,000 against the United States because of violations of the Takings Clause of the Fifth Amendment of the United States Constitution. The United States Court of Federal Claims has jurisdiction over this action pursuant to 28 U.S.C. §§ 1491(a)(1) and 1346(a)(2), as this is a claim against the United States founded on the Fifth Amendment of the United States Constitution for damages in a case not sounding in tort.

## BACKGROUND AND FACTS COMMON TO ALL COUNTS

4. In February 2016, OFAC instructed Deutsche Bank Trust Company Americas ("Deutsche Bank Americas") to refuse to refund Askan's $915,960.96 down payment to Askan after a deal for the sale of a commercial aircraft went sour. Askan twice petitioned OFAC for a license to release the funds, but for more than four years OFAC denied those petitions. In those denials, OFAC stated, without providing any facts supporting its conclusion, that a "specially designated global terrorist" ("SDGT") sanctioned under the GTSR was involved in the transaction. OFAC has never identified the alleged SDGT.

5. Only after Askan filed suit in the U.S. District Court for the District of Columbia (Case. No. 1:20-civ-01458-RJL, "District Court Lawsuit"), OFAC reversed course and issued a

license on August 17, 2020, permitting Deutsche Bank Americas to refund the down payment to Askan. Even then, OFAC did not identify the SDGT allegedly responsible for OFAC's prior decisions to deny the license. But on August 28, 2020, OFAC informed Askan that Deutsche Bank Americas had turned over all of the money in the account to State of New York Office of the Comptroller (the "Comptroller") in November 2019, less than two months after Askan had filed its second license application on October 9, 2019.

6. Without notice to Askan or the public, OFAC had issued a license authorizing the Comptroller to take money out of New York bank accounts once such money was deemed abandoned after three years and that had been blocked pursuant to OFAC's regulations (the "Comptroller License"), including Askan's account. A copy of the Comptroller License under which Deutsche Bank Americas remitted Askan's money to the Comptroller is attached as Exhibit A.

7. As a result, Askan has been forced to apply to the Comptroller to refund its down payment and still has not received any refund. Askan has also been forced to incur approximately $400,000 in attorney's fees and other costs (a) to attempt to determine the identity of the alleged SDGT (b) to reverse OFAC's egregious, arbitrary and capricious determination to block, and refusal to license the return of Askan's down payment to it, and (c) to recover its down payment, including this lawsuit.

8. By compelling Deutsche Bank Americas to block the return of Askan's down payment, OFAC has exercised dominion and physical control over Askan's property and deprived Askan of its property. Furthermore., by issuing the blanket Comptroller License without publishing the license in the Federal Register or making it publicly available, OFAC wrongfully exercised control over Askan's property. And by issuing that blanket license, OFAC

3

colluded with the State of New York to exercise dominion and physical control over Askan's property. OFAC's exercise of dominion and control over Askan's property without just compensation violates the Takings Clause of the Fifth Amendment of the United States Constitution.

9. As a result of OFAC's delay in granting Askan the license it sought and of the Comptroller License, Askan has been forced to pay approximately $400,000 in attorneys' fees and other costs, which continue to mount.

10. As a result of the United States' actions, Askan lost not only its down payment, but was unable to operate its business because of the uncertainties created by OFAC's refusal to disclose the alleged SDGT that purportedly justified OFAC's blocking the return of the down payment. As a result, TIA was forced into bankruptcy and Askan and TIA lost: (i) €670,000 investment into the business, above and beyond its $923,000 down payment, into its airlines operations business; (ii) a one-year $2,160,000 lease to provide airlines operations for another entity; (iii) the opportunity for other leasing agreements for the same aircraft worth at least $1,800,000 per year; and (iv) other business opportunities.

**I. Askan Seeks to Purchase an Airbus A320, And Requests Return of its Down Payment When the Transaction is Cancelled.**

11. In order to operate a commercial airlines, TIA must maintain an Air Operator Certificate ("AOC"). TIA lost its AOC in August 2015 after it could not maintain the statutorily required number of commercial flights. TIA sought to purchase an Airbus A320 to enable it to regain its AOC.

12. On January 4, 2016, Askan made a down payment of $923,000 toward the purchase of an Airbus A320 airplane from JetPro International, LLC ("JetPro"). Askan

4

deposited these funds with Froriep, a Swiss law firm based in Geneva which acted as escrow agent.

13. When JetPro cancelled the transaction, Askan requested that Froriep return the $923,000 down payment, less an escrow fee. When Froriep attempted on February 3, 2016, to transfer the funds from its bank, Credit Suisse AG, to Askan's bank, Akbank T.A.S., the transaction was blocked by Deutsche Bank Americas as discussed below.

## II.   OFAC's Blocking of the Return of Funds.

14. On information and belief, OFAC officials, purportedly acting under the authority of the GTSR, directed Deutsche Bank Americas to arbitrarily block Askan's funds and refuse to return Askan's down payment to Askan. .

15. Pursuant to 31 C.F.R. § 594.203(a), a regulation OFAC promulgated, Deutsche Bank Americas was required to place Askan's funds in an account in the United States, where the funds remained blocked. Pursuant to 31 C.F.R. § 594.202(c), which was also issued by OFAC, Deutsche Bank Americas was not permitted to transfer Askan's funds to anyone without a specific license from OFAC.

16. OFAC has never alleged that Askan or any of its officers, directors, or employees violated any United States law or regulation. OFAC has arbitrarily blocked the return of Askan's down payment, not for anything that Askan has done or been alleged to have done, but solely because an unidentified entity designated under the GTSR, which OFAC has refused to name (and who may have no real relationship to Askan), had an undescribed interest in the transaction.

17. Froriep petitioned OFAC to unblock the money on February 22, 2016. OFAC denied the request (case number SDGT-2016-327008-1) on May 2, 2017, and asserted that an unnamed entity designated under the GTSR had an unidentified interest in the transaction.

18. Askan submitted another petition to OFAC (case number SDGT-2016-329910-1) on May 18, 2016, to release the funds. This petition was also denied on the same day and on the same basis as the petition filed by Froriep.

19. Given the lack of information from OFAC, Askan had to independently investigate the facts and parties to determine the basis on which the agency had cited the GTSR. Askan conducted searches on the parties using OFAC's own SDN List search tool online and using Lexis-Nexis screening software. None of these multiple searches generated any positive or relevant results. Askan found no relevant matches for any party having an interest in the transaction.

20. Askan then hired an independent, third-party due diligence firm in the United States with extensive contacts in Turkey and Europe. That firm found no nexus between the parties at issue with any entities that may be subject to the GTSR.

21. Accordingly, Askan suspected that OFAC's action blocking release of the funds may have been mistaken, apparently due to mistaken identity or incomplete facts.

22. On October 9, 2019, Askan filed another license application (OFAC License No. SDGT-2019-363638-1) requesting OFAC order Deutsche Bank Americas to release the funds. Askan's counsel maintained consistent and regular written and verbal communication with OFAC on various levels regarding the status of this final license application upon being filed, as well as inquiries concerning OFAC's prior license applications and denials.

23. On information and belief, in November 2019, Deutsche Bank Americas physically turned over all of the money in the blocked account to the Comptroller, which currently holds the entire down payment that Askan has sought since February 2016 to have returned to Askan. Prior to August 28, 2020, Askan never received a letter or any other notice

from OFAC, Deutsche Bank Americas, or the Comptroller that the Comptroller had taken physical control over Askan's down payment.

24. Despite repeated requests from Askan, OFAC failed to act on Askan's October 9, 2019 license application until Askan filed the District Court Lawsuit on June 2, 2020. On June 12, 2020, OFAC denied Askan's license application. But in spite of multiple license applications requesting the return of Askan's down payment, OFAC did not begin to compile an administrative record to support its decisions until Askan filed the District Court Lawsuit.

25. In addition, although Askan requested the entire unclassified administrative record from OFAC, which was then ordered by the court on June 9, 2020, OFAC never provided Askan with any of OFAC's communications with Deutsche Bank Americas but instead redacted such communications, nor did OFAC inform Askan of the Comptroller License until afterward on August 28, 2020.

### III. The License OFAC Privately Issued to the New York Office of State Comptroller.

26. In mid-August, 2020, OFAC abruptly changed its position and, on August 17, 2020, issued a license to Deutsche Bank Americas to release the funds from an account in New York City to Askan.

27. But on August 28, 2020, OFAC informed Askan that Deutsche Bank Americas had reported that it no longer had the money in the account being held for Askan. According to OFAC, Deutshe Bank Americas reported that it had turned those funds over to the Comptroller in November 2019 pursuant to the New York Abandoned Property Laws.

28. OFAC further reported to Askan, for the first time, that it had issued the Comptroller License authorizing the Comptroller to take money out of blocked New York bank accounts pursuant to New York Abandoned Property Laws. But rather than revoke the

Comptroller License as it applied to Askan's funds, OFAC has instead forced Askan to seek those funds from the Comptroller.

29. On information and belief, OFAC never published any notice in the Federal Register or any other notice to the public that it was issuing a license to the Comptroller that would allow the Comptroller to seize millions of dollars of blocked assets in New York bank accounts belonging to as many as several hundred individuals and companies. OFAC's failure to publish any notice of the Comptroller License violates its obligations (a) under 5 U.S.C. § 552(a)(1)(D) to make substantive rules of general applicability available to the public, and (b) under 5 U.S.C. § 552(a)(2)(B) to make available to the public any statements of the policy adopted by OFAC that OFAC has not published in the Federal Register.

30. OFAC continues to tell the public the exact opposite, namely that no bank account can escheat to the State of New York without OFAC's approval. FAQ 39 in the Frequently Asked Questions section of OFAC's website provides the following guidance to the public: "the State of New York has a license to escheat blocked funds, *pending OFAC approval of each transfer*." https://home.treasury.gov/policy-issues/financial-sanctions/faqs/39 .(last viewed November 24, 2020, emphasis supplied).

31. Furthermore, under 31 C.F.R. §§ 594.301 and 594.504, OFAC's own regulations explicitly state that a bank that holds blocked funds must obtain a license before it transfers those funds to anyone outside of the bank. Under those regulations and the public guidance that OFAC has given in FAQ 39 on its website, it would be illegal for Deutsche Bank Americas to transfer funds to the State of New York even if state law would otherwise require the bank to escheat the funds.

32. New York escheatment law applies to a bank account only when the funds in that account "have remained *unclaimed* for three years by the person or persons appearing to be entitled thereto…." NY Aband Prop L §300(1)(a)(emphasis supplied). Askan claimed the funds in that account when it filed a license application in 2016 shortly after the account was blocked and even filed a another application in October 2019. Ironically, Askan filed the second of these applications less than two months before the date OFAC now asserts that Deutsche Bank turned the funds over to the State of New York.

33. When Askan requested the Comptroller to return Askan's down payment to it, the Comptroller insisted that Askan complete additional tax forms, documentation, and an indemnification form that Askan would not have been required to complete to obtain a refund of the down payment from Deutsche Bank Americas, and which expose Askan to additional tax obligations for which Askan is not legally liable.

34. As a result of OFAC's delay and OFAC's Comptroller License, Askan has still not been able to retrieve its down payment from the Comptroller. Askan has been forced to borrow to pay approximately $400,000 in attorneys' fees and other costs, and continues to grow. The interest on the loan and Askan's costs continue to mount.

35. As a result of OFAC's actions, Askan has inevitably lost its opportunity to build and develop its business.

## COUNT ONE
**Takings Clause Violation (Blocking Transaction without Due Process)**

36. Askan repeats and realleges the allegations in the Paragraphs 1-35 above.

37. By failing to provide Askan with legally sufficient notice and a hearing required under the Due Process Clause of the Fifth Amendment, and by unreasonably delaying its response to several applications for a license to allow Deutsche Bank Americas to return the

down payment to Askan, OFAC exercised dominion and control over Askan's property and deprived Askan of all use, enjoyment, and rights to the down payment.

38. The government violates the Fifth Amendment Due Process Clause when it fails to properly balance (1) the private interest affected by the action; (2) the risk of erroneous deprivation of such interest; and (3) the government interest in the action.

39. OFAC violated Askan's Fifth Amendment Due Process rights by failing to provide Askan in a timely manner with (1) the unclassified information supporting OFAC's determination and (2) unclassified summaries of the classified information supporting that determination.

40. Among other things, the OFAC has never identified the alleged SDGT that gave OFAC the authority under 31 C.F.R. § 594.201 to block Askan's property in the United States. But the identity of all SDGTs is a matter of public record since all SDGTs are required to be listed on the SDN List.

41. OFAC's conduct, in violation of Askan's Due Process rights, prevented Askan from being able to offer a meaningful, specific, and substantial response to OFAC's blocking of funds, and deprived Askan of both notice and an opportunity to be heard.

42. OFAC also deprived Askan of a meaningful hearing at a meaningful time by (a) failing to begin to compile administrative record prior to being sued; and (b) unreasonably delaying its proceedings. Despite repeated requests from Askan, OFAC failed to act on Askan's October 9, 2019 license application until Askan filed this lawsuit on June 2, 2020. On June 12, 2020, OFAC denied Askan's license application. But in spite of multiple license applications to return Askan's down payment, OFAC did not even begin to compile an administrative record to support its decisions until Askan filed this lawsuit.

43. As a result, OFAC illegally blocked Askan's right to possess and control its own property. As a result, Askan has temporarily lost all rights to use and enjoyment of its down payment and has still been unable to recover that down payment. In addition, Askan has inevitably lost its opportunity to build and develop its business, and has had its property rights depleted by the costs of recovering its property that Askan has been forced to incur as a result of OFAC's actions.

## COUNT TWO
**Takings Clause Violaion (Blocking Transaction – Illegal ComptrollerLicense)**

44. Askan repeats and realleges the allegations in Paragraphs 1-43 above.

45. OFAC issued the Comptroller License without notice to the public in violation of 5 U.S.C. § 552(a), and the funds in the Deutsche Bank America's account, which Askan claimed, were illegally escheated to the Comptroller as unclaimed funds.

46. Before August 28, 2020, Askan never received a letter or any other notice from OFAC, Deutsche Bank Americas, or the Comptroller that the Comptroller had taken physical control over Askan's down payment.

47. The Comptroller, acting together with OFAC, has exercised control and dominion over, and continues to exercise control and dominion over funds that Askan claimed, that Askan had never abandoned, and that rightfully belonged to Askan.

48. As a result, OFAC illegally blocked Askan's right to possess and control its own property and granted the illegal Comptroller License allowing the Comptroller to exercise dominion and physical control over Askan's property. As a result, Askan has temporarily lost all rights to use and enjoyment of its down payment and has still been unable to recover that down payment. In addition, Askan has inevitably lost its opportunity to build and develop its business,

and has had its property rights depleted by the costs of recovering its property that Askan has been forced to incur as a result of OFAC's and the Comptroller's actions.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Askan Holdings, Ltd. requests the following relief:

49. Damages against the United States for violation of Askan's constitutional rights under the Takings Clauses of the Fifth Amendment;

50. A declaration that Defendant has violated the Takings Clause of the Fifth Amendment of the United States Constitution.

51. An award to Askan of its reasonable attorneys' fees and the costs and disbursements incurred in this action; and

52. Such other and further relief as this Court deems just and proper.

Dated: December 16, 2020                                  Respectfully submitted,

        /s/ Teresa N. Taylor
Teresa Taylor
(Attorney of Record)
Joseph G. Cosby
(Attorney of Record)
Thomas Southard
(Of Counsel)
Butzel Long, P.C.
1909 K Street, N.W., Suite 500
Washington, DC 20006
Tel: (202) 454-2800
Fax: (202) 454-2805
taylortn@butzel.com
southard@butzel.com
cosby@butzel.com

*Counsel to Plaintiff Askan Holdings, Ltd.*