```
 1              IN THE UNITED STATES COURT OF FEDERAL CLAIMS

 2

 3

 4   ASKAN HOLDINGS, LTD.,                 )

 5            Plaintiff,                   )

 6                  vs.                    ) Case No. 20-1870C

 7   THE UNITED STATES OF AMERICA,         )

 8            Defendant.                   )

 9

10

11

12

13                    Hearing via Webex

14                 Tuesday, August 17, 2021

15                      10:00 a.m.

16                    Oral Argument

17

18

19         BEFORE:  THE HONORABLE RICHARD A. HERTLING

20

21

22

23

24

25   Reported by:  Jennifer Razzino, CER
```

2

Askan Holdings v. USA                                    8/17/2021

```
 1    APPEARANCES:
 2    ON BEHALF OF THE PLAINTIFFS:
 3              TERESA N. TAYLOR, ESQ.
 4              LINDSAY DENNIS, ESQ.
 5              Butzel Long
 6              1909 K Street, NW
 7              Suite 500
 8              Washington, DC  20006
 9              (202) 454-2885
10              taylortn@butzel.com
11
12
13    ON BEHALF OF THE DEFENDANT:
14              NATHANIEL B. YALE, ESQ.
15              U.S. Department of Justice
16              Post Office Box 480
17              Ben Franklin Station
18              Washington, DC  20044
19              (202) 616-0464
20              nathaniel.b.yale@usdoj.gov
21
22
23
24
25
```

Askan Holdings v. USA                                    8/17/2021

```
 1                    P R O C E E D I N G S
 2                    -   -   -   -   -
 3            (Proceedings called to order at 10:12 a.m.)
 4            THE COURT:  This is argument on the Defendant's
 5     motion to dismiss in Askan Holdings, Limited, vs. United
 6     States, Docket Number 20-1870.  Let's begin with
 7     appearance of counsel for the record, then I'll go over a
 8     couple of ground rules as to how I tend to conduct these
 9     virtual hearings, and then we will get started.  But let
10     me ask Ms. Taylor to make her appearance for the record,
11     please.
12            MS. TAYLOR:  Yes, Teresa Taylor, Butzel Long,
13     attorney for the Plaintiff, Askan Holdings, LLC.
14            THE COURT:  Good morning, Ms. Taylor.  And do
15     you have anybody else on the line with you?
16            MS. TAYLOR:  I do.  Lindsey Dennis.
17            MS. DENNIS:  Yes, Your Honor.  Lindsey Dennis.
18     I am an associate with Ms. Taylor.
19            THE COURT:  Good morning, Ms. Dennis.  Nice to
20     have you with us.
21            Anybody else, Ms. Taylor?
22            MS. TAYLOR:  I'm not sure.  We have one
23     attorney who's listening in, but I'm not sure that he is
24     on the line.  It looks like he has not connected yet.
25            THE COURT:  Okay.
```

Askan Holdings v. USA                                    8/17/2021

1           Mr. Yale, would you please make your appearance
2    for the record.
3           MR. YALE:  Sure, Your Honor.  It's Nathaniel
4    Yale from the Department of Justice on behalf of the
5    Defendant, the United States.
6           THE COURT:  And do you have agency counsel on
7    the line with you that you'd like to introduce?
8           MR. YALE:  No.  We don't have anyone else who's
9    going to be making an appearance in this case, for this
10   hearing, Your Honor.
11          THE COURT:  Okay.  Thank you, Mr. Yale.  Mr.
12   Yale, I trust you did not go to Harvard.
13          MR. YALE:  No, I went to Michigan and Cornell,
14   but I did grow up around New Haven and went to high
15   school there, so...
16          THE COURT:  Are you related to Elihu Yale?
17          MR. YALE:  Well, it's a little complicated.
18   Maybe very, very, very, very faintly.
19          THE COURT:  Okay.  Well, good morning.  Good
20   morning to both counsel.
21          The way we will proceed -- this is the way I've
22   been doing it since we began our virtual hearings when
23   the pandemic started, because of the slight delay in the
24   audio, and the fact that it being virtual, you're not
25   really necessarily focused on me.  You're not going to

5

Askan Holdings v. USA                                          8/17/2021

1   see me kind of leaning forward in my chair to ask a
2   question.
3              I have found it useful -- and we will proceed
4   this way -- that I will give each counsel up to ten
5   minutes uninterrupted by questions from me to lay out
6   your argument.  You don't have to conclude within ten
7   minutes.  In fact, I don't impose time limits, so you'll
8   be able to go as long as you'd like, but you'll get ten
9   free minutes without questions in order to lay out your
10  argument.
11             After ten minutes are up, I will feel free to
12  intervene with questions, but I may not have any
13  questions after the ten minutes are up, so don't stop
14  after ten minutes and look at me waiting for a question.
15  I will ask questions once the ten minutes are up.  I will
16  ask questions as they occur to me or when I want, but you
17  should keep going unless and until I ask a question.
18             As I say, take as much time as you need in the
19  opening -- your opening round, and as I will with my
20  questions.  We will then go back and forth, and I'll give
21  each counsel as many opportunities as you think you need
22  to address any issues that are out there or respond to
23  arguments or comments that opposing counsel have made
24  until everything is -- until each side considers that it
25  has made its complete argument.

Askan Holdings v. USA                                                      8/17/2021

```
 1                To that -- to that effect, though, because you
 2       will have as many opportunities as you need to respond to
 3       arguments that opposing counsel makes, I would ask that
 4       you not interrupt your opposing counsel when he or she is
 5       speaking.  You will have the opportunity to rebut and
 6       respond when it's your turn, but it's just -- I say, on
 7       the video, it's just easier if we don't go back and
 8       forth, if there are no interruptions.  So I would ask
 9       you, just -- if opposing counsel says something that you
10       think calls for a response, please just jot it down, and
11       you will have the opportunity to offer that response when
12       it's your turn.
13                When you are not speaking, I ask that you keep
14       yourself -- each of you -- on mute to reduce the feedback
15       and echoing.  And with that, I don't think I have
16       anything further before we go ahead and get started.
17                Mr. Yale, any preliminary matters you wish to
18       broach with me?
19                MR. YALE:  No, Your Honor.
20                THE COURT:  Okay, thank you.
21                Ms. Taylor, any preliminary matters that you
22       wish to broach?
23                MS. TAYLOR:  No, Your Honor.
24                THE COURT:  Okay.  Thank you.  Then, Mr. Yale,
25       we are here on the Defendant's motions, so the floor is
```

Askan Holdings v. USA                                              8/17/2021

1    yours.  Please proceed.

2             MR. YALE:  Thank you, Your Honor, and may it

3    please the Court.  As we established in our moving

4    papers, Askan's suit suffers from several deficiencies

5    that mandate dismissals.  We'd first like to address a

6    couple of the jurisdictional deficiencies.  So to begin,

7    Section 1500, a longstanding statutory bar, precludes

8    this Court from exercising jurisdiction over the suit.

9    That's because, as we laid out in our motion papers, at

10   the time that it filed its original complaint in this

11   case, Askan had a suit pending in the District Court

12   based on the same set of operative facts.

13            So it's well established that Section 1500 has

14   a general, two-part inquiry.  I'm not really going to hit

15   much on the first prong because I think there's agreement

16   that there was an earlier suit pending in another court,

17   the District Court for the District of Columbia, so, you

18   know, as of the date of the filing of this case, which

19   was December 16, 2020, there was a suit pending.  So I'm

20   not going to address that any further.

21            So that first prong is met, and the second

22   prong is also clearly met.  And under the second prong,

23   two suits are for and respect to the same claim when

24   they're based upon substantially the same operative

25   facts.  So there's a few principles I just want to stress

Askan Holdings v. USA                                    8/17/2021

1    about this second prong inquiry.  First, the relief

2    requested in the two suits is irrelevant.  The legal

3    theories -- the Federal Circuit and the Supreme Court

4    have clearly held that that's also not germane to the

5    inquiry.

6           And the other principle I want to hit on is

7    that when you're conducting this inquiry, it's as of the

8    date of the filing of the complaint in this case.  And so

9    any subsequent efforts to amend the complaint or whatnot,

10   I mean, those are -- those are irrelevant, and that's --

11   that's been clearly held in a number of cases in the

12   Federal Circuit -- Resource Investments; Central Pines

13   clearly held that.

14          So the inquiry is comparing the factual

15   allegations in the original complaint here with the

16   operative District Court complaint.  Here, it would be

17   the amended complaint from the District Court.  And when

18   you conduct that inquiry, there could -- it's clearly

19   based upon the same operative facts.  I mean, frankly,

20   it's -- you know, most of these factual allegations are

21   just copied and pasted from the District Court case.  The

22   two complaints, they involve the same purported property

23   interest, so this money, and it's the same alleged

24   government conduct.  So we have the blocking of the funds

25   by OFAC, the alleged failure to timely grant a license

Askan Holdings v. USA                                          8/17/2021

1    and return the funds, and the factual allegations with

2    respect to this license that was issued to the State of

3    New York, which allegedly resulted in this escheat.

4            And so when you look at those operative facts,

5    I mean, not only is there substantial overlap, I mean,

6    what we're talking about -- well, it's essentially the

7    same factual allegations.  And so there's really only one

8    avenue here, and it's dismissal based upon 1500.  So I'll

9    address just very briefly a couple of the arguments that

10   Askan has made in this case with respect to 1500.  They

11   primarily seem to suggest that what we're talking about

12   is an overlap of background facts.  I mean, that's just

13   not true.  I mean, that's -- if you compare the factual

14   allegations -- and we did this in our moving papers --

15   it's clearly essentially a complete overlap there.

16           And, for example, in their response brief, they

17   mentioned that, well, this Court of Federal Claims case

18   is about delay, and the other case doesn't have those

19   factual allegations.  Well, I mean, there's an entire

20   count of the complaint that talks about unreasonable

21   delay.  So, I mean, I'm happy to address certainly later

22   any of those arguments, but if ever there's a case for

23   1500, this is certainly it, and based upon the

24   longstanding precedent, including Supreme Court

25   precedent, it has clearly stated that 1500 is a broad

Askan Holdings v. USA                                  8/17/2021

```
 1   prohibition.  I mean, this suit is clearly barred by
 2   1500.
 3          You know, I'll generally -- I'll just sort of
 4   briefly touch on some of these -- some of the other
 5   arguments that we set forth, and I only have ten minutes,
 6   so --
 7          THE COURT:  Oh, no, you have as much time as
 8   you need.  You don't have only ten minutes.  That's why I
 9   say, you only have ten minutes before I start asking
10   questions.  You've got all the time you want to take.
11          MR. YALE:  Oh, okay, Your Honor.
12          THE COURT:  So take all the time you want, just
13   after ten minutes, I will feel free to start asking you
14   questions.
15          MR. YALE:  Understood, Your Honor.
16          THE COURT:  And the same goes for Ms. Taylor.
17   She'll have all the time she needs.
18          MR. YALE:  Understood, Your Honor, and I
19   apologize for that.
20          So moving on to sort of our second argument,
21   which is really an argument about extraterritorial
22   jurisdiction and standing, so we think it's clear from
23   the case law that when you have a foreign plaintiff they
24   have to demonstrate standing to bring a Fifth Amendment
25   takings -- a Fifth Amendment takings claim in this Court.
```

Askan Holdings v. USA                                    8/17/2021

```
 1   And so Plaintiff has set -- has really offered very
 2   little with respect to how they're meeting the standard
 3   requirement.
 4           There's really sort of two allegations that
 5   they've put forth.  The first is that the funds were
 6   taken in the United States, and as we -- as we pointed to
 7   in our papers, we think that that's just legally
 8   insufficient.  Here -- first of all, the standing inquiry
 9   has to be independent from the takings argument, the
10   takings claim, and we don't think that that's -- that's
11   met here.
12           Also, you know, in their response brief, they
13   discussed this sort of clearing process of the funds,
14   but there's no allegations to that effect in their
15   amended complaint in this Court.  And, you know, it's
16   certainly -- you know, there's no allegations that they
17   had knowledge that these funds would ever even pass
18   through, you know, an American bank.  And even if that
19   was the case, we have -- we haven't found any case that
20   would suggest that the mere fact that funds passed
21   briefly through an American bank would constitute
22   sufficient grounds for constitutional standing.
23           The other sort of -- the other allegation that
24   they've similarly pointed to is an allegation that in
25   this transaction there was an American company, in this
```

Askan Holdings v. USA                                      8/17/2021

1    transaction that eventually fell apart.  Again, that's
2    just really -- that's really hardly any connection at
3    all.  It's certainly not a significant connection.  You
4    know, no court, as far as we've been able to ascertain,
5    has pointed to the fact that there's one failed
6    transaction with a U.S. company is sufficient for
7    constitutional standing.
8            And, you know, we certainly recognize that
9    there's a couple of cases in this Court where U.S.
10   essentially contractors who are essentially
11   subcontractors on U.S. Government contracts were able to
12   demonstrate standing under -- you know, under the Fifth
13   Amendment, but in both of those cases, what you have is
14   preexisting contractual relationships with the United
15   States.  So we're talking about several instances where
16   those plaintiffs were prime contractors on government
17   contracts.
18           And, here, there's just really, you know, just
19   very little that's been offered and certainly nothing
20   that any court has ever found sufficient to bring a
21   constitutional claim.  And so we think that that really
22   contravenes the well established Supreme Court precedent
23   on extraterritorial standing.
24           So those are the two jurisdictional
25   deficiencies, so I'll move on sort of to whether or not

Askan Holdings v. USA                                    8/17/2021

```
 1    there's actually -- Plaintiffs have actually stated a
 2    taking claim as a matter of law, and we think as we set
 3    forth in our motion papers that the police power
 4    doctrine, as an initial matter, would bar this claim.
 5    So, you know, we set forth -- set forth in our briefing
 6    that there's -- it's well established, there's certain
 7    exercises of the police power that courts have never
 8    found to be a taking.  We note that in the Court of
 9    Federal Claims in the Chichakli decision that Chief Judge
10    Kaplan, you know, had a decision that specifically
11    applied that doctrine to an OFAC sanctions case.  And so
12    we think that the police power doctrine would bar --
13    would bar there being a takings claim as a matter of law.
14            THE COURT:  Mr. Yale, let me ask you about
15    that.  And I realize you're using the language the
16    Circuit has used, so I'm not -- I'm not questioning your
17    reliance on the doctrine, and far be for me to call into
18    question anything that a higher court does, but we all
19    learn in first-year constitutional law class in law
20    school that the national government is a government that
21    exercises only the powers enumerated in the United States
22    Constitution.  Where in the United States Constitution is
23    the Federal Government afforded police power?
24            MR. YALE:  Well --
25            THE COURT:  We all know traditionally police
```

Askan Holdings v. USA                                    8/17/2021

```
 1    power belongs to the states, as the initial sovereign
 2    entities, endowed with the power that they absorbed from
 3    the royal warrant that they received in being
 4    established, so we know that the states exercise police
 5    power.  But what the United States Government is doing
 6    here and what -- the power Congress is exercising in
 7    IEEPA and that the President is, therefore, exercising
 8    pursuant to legal authority granted him by IEEPA, it's
 9    not really the police power we're talking about, is it?
10    I know the Circuit has used that term, but it's not the
11    police power, is it, because the national government
12    doesn't really have police power, does it?
13            MR. YALE:  Well, I think the case law has used
14    that in the context of -- for example, the Federal
15    Circuit in Florida Rock has said that when we're talking
16    -- obviously the states have sort of a general police
17    power.  When we're talking about the Federal Government's
18    police power, obviously, the Federal Government has to
19    act pursuant to some enumerated power.  So, you know, if
20    they're acting pursuant to the taxation clause or the
21    commerce clause or whatnot, the courts have essentially
22    coined this term, you know, sort of police power for
23    certain exercises, particularly where, you know, the
24    Federal Government is acting for public health and safety
25    in particular and certain exercises of it.  You know --
```

Askan Holdings v. USA                                           8/17/2021

```
 1                THE COURT:  So is this --
 2                MR. YALE:  -- the other way to --
 3                THE COURT:  -- is this -- let me ask.  Is this
 4      power -- is this power pursuant to the congressional
 5      authority and the national authority to regulate and
 6      conduct foreign affairs, or does it derive from the
 7      President's commander-in-chief power and Congress'
 8      authority to regulate the -- pass laws regarding the
 9      national defense?
10                MR. YALE:  Well, I think --
11                THE COURT:  And it's really a national defense
12      issue, isn't it?  It's not really technically police
13      power as we would understand it when the state exercises
14      it.
15                MR. YALE:  Well, I think it's a little
16      different because the state -- states obviously cannot
17      conduct foreign affairs and whatnot, but I --
18                THE COURT:  Right.
19                MR. YALE:  -- think that it can be explained by
20      both.  I mean, there's -- there's a statute -- overall
21      statutory framework in this case, and obviously there's
22      an executive order which has to do with the President,
23      you know, acting pursuant to national security.  But I
24      think more broadly what the courts, including the Federal
25      Circuit, have sort of really focused on is there's
```

Askan Holdings v. USA                                      8/17/2021

1     certain exercises of this power that have never been

2     found to implicate the takings clause.  So -- and that's

3     really what -- that's really what we're focusing on.  So

4     every time the Government acts does not necessarily

5     implement the takings clause in particular.  And, you

6     know, we think that this OFAC blocking -- you know,

7     blocking of this transactions falls within that.

8            And we can sort of -- you know, I'm also -- you

9     know, we made a number of other arguments with respect to

10    just takings doctrine as well, but we do think that this

11    falls just based on Federal Circuit precedent, which has

12    to control in this case, that this -- you know, this

13    would fall squarely within that.

14           THE COURT:  You know, the -- granted, it's

15    inconsistent with the regulatory and statutory scheme,

16    and indeed would be incoherent, if OFAC or Treasury were

17    to -- were to block -- were to confiscate property that

18    belonged to a terrorist -- we'll use the terrorist

19    because we're talking about the terrorist designation

20    here.  It would be incoherent for the terrorist, or the

21    person whose property was seized or blocked to turn

22    around and be able to maintain a taking action, a takings

23    action in this Court.

24           But -- and many of the cases deal with that

25    scenario.  Does it make a difference, does it make a

Askan Holdings v. USA                                          8/17/2021

1    legal difference, if the Plaintiff alleges complete

2    innocence, that -- as Askan has here, that the property

3    that was blocked, in fact, bears no connection to a

4    terrorist, and I presume that the allegation -- they

5    don't make an allegation, but I presume that the notion

6    is OFAC made a mistake, right?  Maybe the Plaintiff's

7    owner has -- shares a name or has a similar name with

8    somebody who is, you know, a terrorist and, I mean, you

9    know, we've read in the papers, you know, just in public

10   that people who share -- I remember early on, after 9/11,

11   Senator Kennedy got popped at the airport because there

12   was somebody on the terrorist watch list named Edward

13   Kennedy.  I don't know if he was an IRA person or what.

14           So we know the terrorist watch list can make

15   mistakes.  We know -- and it's been public and I believe

16   that -- I believe the executive has acknowledged that in

17   some instances, particularly when you're dealing with

18   foreign names that have to be transliterated into

19   English, or spelled with English -- you know, with -- in

20   the Latin alphabet, even though they normally aren't,

21   although I think Turkish is spelled with a Latin

22   alphabet, but mistakes do happen.  So here, the Plaintiff

23   is saying we have no idea what happened here, but there's

24   no -- there's no terrorist involved in our organization,

25   and so OFAC made a mistake.

Askan Holdings v. USA                                    8/17/2021

1        In that context, that distinguishes to some
2   extent between the cases where you've had -- and between
3   the purpose of the blocking and not -- does that make a
4   difference as far as the Defendant is concerned, that the
5   Plaintiff has alleged it and its ownership interest are
6   completely innocent of the -- of warranting being put on
7   the terrorist watch list?  Or does that make a difference
8   for the Fifth Amendment takings claim?
9        MR. YALE:  It makes no difference, and we cited
10  those cases.  I mean, that's -- the Federal Circuit has
11  held that.  That's the Kam Almaz case, where there was
12  certainly a dissent in that case, essentially pointing
13  that out, that maybe in some certain circumstances, and
14  I'm not going to, you know, sort of characterize this one
15  or not, that there could be some sort of unfairness
16  component or whatnot, but the fact that somebody is
17  claiming innocence, it's irrelevant.  It's legally
18  irrelevant.
19       And that's also being derived from the Bennis
20  case, and so we -- that's really, at least at the Federal
21  Circuit level, that's black letter law that that just
22  doesn't go into the equation.  And the other component to
23  that is if -- there's a distinction here because if
24  you're -- if you're bringing a takings claim, you have to
25  concede that it's authorized and lawful.  And so when

1    there's no jurisdiction, if what you're saying is, well,

2    if there was actually sort of a proper blocking here, we

3    have no takings claim, but this was not proper.  So

4    that's something.  That's a situation where, again, the

5    Federal Circuit has consistently held there would be no

6    jurisdiction because your takings claim is one-to-one

7    relying upon the act that the action was not authorized

8    in law.

9              THE COURT:  So the answer there would be -- the

10   Plaintiff would have to go bring an APA claim in the

11   District Court first, saying the blocking is -- was not

12   properly authorized because we don't -- you know, we

13   don't belong on the terrorist watch list, and that's an

14   APA claim.  It's not a claim for monetary relief in our

15   Court.

16             MR. YALE:  It's not a monetary -- a claim for

17   monetary relief in our Court.  That's correct, Your

18   Honor.

19             THE COURT:  Okay.  Thank you.  Please proceed.

20   Go ahead.

21             MR. YALE:  And so just -- you know, so with

22   respect to the police power cases, I mean, it's well

23   established that, you know, you're not getting into any

24   of sort of the normal takings test, but, you know, sort

25   of -- even if we're -- and we, obviously, you know, have

Askan Holdings v. USA                                    8/17/2021

1    just gone through why the takings claim should be

2    dismissed based upon the police power doctrine, but even

3    if we're getting -- going to get into sort of applying

4    sort of a takings framework, you know, Plaintiffs also

5    can't -- just as a matter of law can't meet that.  So,

6    you know, in general, when we're talking about regulatory

7    takings, it's the Penn Central framework.  And so we have

8    here -- you know, you have to have an economic impact.

9           So we have a situation here -- and the economic

10   impact has to be, you know, pretty severe, so we have

11   here a situation where at this point in time, I mean,

12   Plaintiffs have received their funds back with interest,

13   and so any economic impact is just going to be, at best,

14   marginal.  Really we don't really see that there's any

15   cognizable economic impact.

16          Now, Plaintiffs have pointed to a couple of

17   things.  They sort of -- they've mentioned that their --

18   you know, I guess their parent company is -- went

19   bankrupt or whatnot.  They've pointed -- I mean, those

20   are, at best, consequential damages.  Really, I'm not

21   even sure how a -- you know, a plaintiff can even have

22   standing to really even be bringing such a claim for

23   their parent company, but regardless, I mean, those are

24   the -- what was allegedly taken here was funds, was

25   money.  And so, you know, they've gotten that back with

Askan Holdings v. USA                                          8/17/2021

1    interest.  And when you're looking at the economic impact

2    under a takings claim, that's the analysis.

3           You know, again, when we get into the other

4    prongs of Penn Central, you know, we already talked about

5    the government action to some extent.  You know, here,

6    you know, we're not aware of any -- any -- not a single

7    takings case where a court has ever found, you know, OFAC

8    sanctions to constitute sufficient government action for

9    a taking.  And, obviously, that overlaps, to some extent,

10   with the police power doctrine, but what we're talking

11   about here are -- I mean, these are regulations trying to

12   protect the country against terrorism and obviously

13   implicates national security concerns.  And so, you know,

14   we think that that prong strongly weighs against the

15   finding of a taking here.

16          You know, Plaintiff, with respect to

17   investment-backed expectations, I mean, there was nothing

18   in the amended complaint about investment-backed

19   expectations, but, you know, we've sort of pointed out

20   that, you know, international commerce, international

21   banking is a highly regulated industry.  You know, we

22   think that when you're conducting such transactions that,

23   look, you have to be aware that the Government has had a

24   longstanding -- longstanding statutory scheme here.

25          Plaintiff has raised sort of this context

Askan Holdings v. USA                                    8/17/2021

1    argument about delay.  I think in the response brief,
2    they had this as a fourth prong of -- a fourth fact.  I
3    mean, I think it's relative -- it's pretty clear based
4    upon the case law -- Apollo is a case in the Federal
5    Circuit that, you know, delay, if anything, would have to
6    be addressed in the character of the government action
7    prong, but they've certainly -- you know, they haven't --
8    they certainly have not really even on the face alleged
9    any sort of, you know, sufficiently extraordinary delay
10   here.  And they really never explained why sort of in the
11   first instance they couldn't have gone, you know, to
12   District Court and raised these issues much earlier.
13          And at the end of the day, the delay they're
14   pointing to seemingly seems to be a delay between this
15   October 2019 reconsideration, and when in August 2020
16   there was a license issued by OFAC to New York State.
17   And we just don't think that that really just, even on
18   its face, would sort of constitute anything that would
19   sort of detract from the character of the government
20   action in a case like this, just weighing so heavily
21   against the finding of a taking.
22          And, you know, we also -- you know, I'm sort of
23   also happy to address sort of, like, any per se takings
24   theory.  To the extent they're arguing that this would be
25   a Lucas taking, there's -- you know, it's -- they've

Askan Holdings v. USA                                    8/17/2021

1    obviously -- they've received the money back.  There's no

2    such thing as a temporary Lucas taking.  That's straight

3    out of Tahoe Sierra.  The Government here didn't

4    appropriate.  There's no physical appropriation of these

5    funds.

6           There's -- you know, it would be a strange

7    finding to have a situation where there's somehow a

8    physical taking where the Government hasn't appropriated

9    the funds and is paying -- and the statutory scheme said

10   they're getting commercially reasonable interest.  So we

11   certainly don't think that any per se taking theory would

12   apply here, and under Penn Central, we think, as a matter

13   of law, it's not a taking.  And that's even after

14   Plaintiffs would have to sort of get past the initial

15   hurdle that we talked about, and in particular 1500,

16   which we think just clearly -- there's really only one

17   avenue with respect to this case on sort of

18   jurisdictional grounds, which is dismissal based upon

19   1500.

20          THE COURT:  Well, let me ask you about that,

21   and as you closed the circle very nicely on taking this

22   back to where you started.  I know you were dismissive of

23   the Plaintiff's acknowledged recognition that the

24   background facts between the Plaintiff's suit in the

25   District Court and its suit here are the same, of course,

Askan Holdings v. USA                                    8/17/2021

1    the background facts are.  But what do you make of the
2    Plaintiff's argument that what the Plaintiff is
3    challenging in the District Court are the acts of the
4    United States and the Comptroller of New York State,
5    subsequent to the initial blocking of the funds, and that
6    the operative facts undergirding the District Court suit
7    are facts that -- to what transpired after OFAC directed
8    Deutsche Bank to block the funds, to not complete the
9    transaction -- the remittance transaction?
10           Whereas the suit here deals with OFAC's initial
11   decision to block the funds, that that was the taking,
12   that's what's being challenged here.  Now, that may --
13   that goes to, you know, the substantive point you were
14   just making, well, if they got the money back with
15   interest, can there be any taking here whatsoever?  Is
16   there ever -- is there any case anywhere that approves
17   the award of consequential damages for, you know, or a
18   non-taking because somebody had to do some work to, you
19   know -- to address an alleged taking?
20           That may go -- you know, that may go to my
21   opportunity to get to your (b)(6) argument, but why isn't
22   the Plaintiff's response to your 1500 argument correct,
23   that what they're complaining about here is the blocking,
24   and what they were complaining about in the District
25   Court, sure, they -- it involves the same run of facts

Askan Holdings v. USA                                    8/17/2021

1    leading up to -- to, quote, the blocking, but then the
2    District Court action builds on that and says what
3    they're complaining about in the District Court is not
4    the blocking; it's the things that OFAC did post-blocking
5    that brings the Plaintiff to the District Court.  Why
6    isn't that sufficiently distinct to enable the Plaintiff
7    to evade the stricture of Section 1500?
8            MR. YALE:  Well, Your Honor, that's just wholly
9    disconnected from the actual complaint.  So I'll -- just
10   -- even if you just look at Count 1 of their complaint
11   here, which is the original complaint, by failing to
12   provide Askan with legally sufficient notice and a
13   hearing required under the due process clause, if you go
14   through all of these factual allegations, all of this is
15   after the initial blocking, and the blocking is -- the
16   initial blocking is not just what's at issue as pled in
17   this original complaint in this case, because the
18   blocking lasted for -- they're saying -- four years or
19   however -- however long it's been, but the factual -- the
20   facts that they're pointing to under these two claims are
21   the very same.
22           And, you know, that's obviously copy and
23   pasted or whatnot, but that's what they're saying the
24   takings are.  The takings are a blocking transaction
25   without due process.  That's Count 1 in this complaint,

Askan Holdings v. USA                                    8/17/2021

1    and so that's not just -- that's just not the initial
2    blocking by OFAC.  What they're talking, among other
3    things, you know, they're talking about they were not
4    provided with information, and so that's just -- that's
5    just -- I mean, I guess in theory, you know, if they had
6    a completely different complaint and they had some legal
7    basis to point to, but they can't point to that here, and
8    in her -- and in their response brief, they cited -- they
9    made zero citations to their complaint because, you know,
10   it doesn't support that.  It's a straightforward 1500
11   analysis.  It's the same -- you mentioned the
12   comptroller's license.
13          So that was after this sort of initial
14   blocking, but that's Count 2 here, a legal comptroller's
15   license, and it's all going to the point that there was a
16   blocking, and then there were actions taken by the
17   Government where they're claiming they were not able to
18   get their money back.  And that's supporting these
19   takings claims, but it's the same factual allegations
20   from the District Court.  And so there's no -- there's
21   just absolutely no daylight there, with all due respect
22   to sort of this background facts argument.
23          THE COURT:  I have no further questions at this
24   point, Mr. Yale.  Do you have anything further you want
25   to present to me before you have an opportunity to

Askan Holdings v. USA                                    8/17/2021

     1    respond to Ms. Taylor?

     2              MR. YALE:  No, Your Honor.  Thank you.

     3              THE COURT:  Okay.  Thank you, Mr. Yale.

     4    Appreciate it.  Let me ask you to mute yourself, then.

     5              Ms. Taylor, the floor is yours.  As I said,

     6    you'll get as much time as you'd like, but you'll have at

     7    least ten minutes without interruption from me to lay our

     8    your argument.  Please proceed.

     9              MS. TAYLOR:  Thank you, Your Honor.  First, I'd

    10    like to say that, you know, we're here on a motion to

    11    dismiss.  We're not here on a motion for summary

    12    judgment.  Our allegations are well pled, pled enough to

    13    survive a motion to dismiss and go forward on this.  I

    14    think that Mr. Yale is very calm, calmly confusing the

    15    Court here, and he confuses the regulatory scheme.  His

    16    discussion now, he miscites the Kam Almaz case, saying

    17    that it's an OFAC case.  It's not; it was a copyright

    18    case.  You know, and it doesn't involve OFAC.

    19              You know, I'd like to remind the Court here

    20    that, you know -- and there were many facts included that

    21    were background facts in the original complaint.  Our

    22    amended complaint is clear.  I understand the rule here

    23    that's being discussed, but, you know, this case is

    24    really about justice for the Plaintiff.  This is a

    25    legitimate takings case.  We note the facts at issue here

Askan Holdings v. USA                                    8/17/2021

1    are narrow.  We don't challenge OFAC's authorization to

2    block.

3            You know, there was a deprivation of property

4    here that bankrupted the entire -- the seed funds for a

5    plane.  The owner [brief audio lapse] here has other

6    airline -- has another airline that's very successful,

7    other -- lots of other hotels.  They know what they were

8    doing.  They had a well planned out business plan.  This

9    plane was the start of several routes, lots of contracts,

10   you know, landing rights, et cetera, operation contracts

11   that could not be carried forth.  The business was

12   basically hijacked and destroyed with the initial

13   blocking.  That's clear.

14           You know, OFAC regulatory issues here can be

15   rather murky and, you know, I think the defense counsel's

16   purposefully, it seems, or maybe not purposefully, but

17   with all due respect, confusing what we're really looking

18   at here.  This is actually a simple case, and so for the

19   other distinct facts, you know, we're asking for just

20   compensation for Askan's full business and, you know,

21   which we can get into more later, and we're not here to

22   prove all of the contracts and that entire amount of

23   business and what did exist that was taken, but I think

24   we properly alleged such, that, you know, Askan's

25   reasonably backed expectations here were many licenses,

Askan Holdings v. USA                                          8/17/2021

1   parking, landing rights, slots, everything that goes with
2   running a legitimate airline business.
3         The routes -- the route that this plane was
4   started with was in dire need.  It's a dire -- it's a
5   commuter route.  The plan was to also expand into other
6   countries, surrounding countries.  And, you know, we can
7   provide that information at a later date.
8         You know, what happened here, there was no SDN,
9   you know, no SDGT, which is a subcategory of an SDN.
10  There was no SDN at all.  This is not a criminal case.
11  This is not a criminal blocking.  This is civil.  This
12  never turned into a criminal OFAC matter.  So let's be
13  clear on that, and let's not be confused here about what
14  this -- what really happened here.  So our Plaintiff was
15  never suspected as being a criminal.  There was never any
16  SDN.  That list would have to be public.
17        The purpose of publishing SDNs is so that it
18  provides consistency to the business community to do
19  their due diligence, their compliance, so that they can
20  avoid bad actors.  It is not to be opaque.  It is not a
21  game of catch-ya, got-ya.  That is not how OFAC works.
22  That is not the intent of the regulations here.  That is
23  not the intent of the SDN list.  And that is not the --
24  the Plaintiff was never an SDN here, was not under
25  investigation, they don't -- OFAC does not block money

Askan Holdings v. USA                                    8/17/2021

1    during an investigation.  That is not how they do it.

2              And so there was no -- the purpose here is, you

3    know, cutting off revenue to SDNs to choke off access to

4    the international trade and economic system, and, you

5    know, the benefits of trading with the U.S. here.  This

6    is not something as defense counsel -- which would never

7    be apropos in the international business community that

8    somehow generally international banking in and of itself

9    or even, you know, let's say the airline business is such

10   that it is highly regulated and that any actor can expect

11   for their money to be blocked.  That just makes zero

12   sense.

13             That is not what this is about.  That is not

14   what the regulations are about.  That is not the intent

15   of OFAC.  That is not what businesses, actors go into in

16   doing business in the international community.  They do

17   not come with the expectation that the money will be

18   blocked.  The regulations are for exactly the opposite.

19   The U.S. sanctions policy is aimed at isolating certain

20   countries and entities from the benefits of trade with

21   the United States.  It requires transparency to the

22   general public.  The policy is not served by purposefully

23   being opaque.

24             Also, we're not requesting the name of the SDN

25   here.  We don't need it for a takings claim.  We're only

Askan Holdings v. USA                                    8/17/2021

 1    alleging a takings violation, and we're looking at the
 2    initial blocking.  The facts here, there are a lot of
 3    facts here, yes.  There are background facts.  We are not
 4    focusing on the end aspect here of a sua sponte license
 5    which was issued, mind you, that OFAC has never done
 6    before.  You know, we're not focusing on that.  That's in
 7    the other case.  You know, in the other case, we allege
 8    APA violations, FOIA violations, 1983 violations, Fifth
 9    Amendment due process violations.  We do not allege a
10    taking violation.  That is what we do here.
11            We are not challenging the validity of OFAC's
12    blocking or their authority here.  And the other cases
13    started as an injunction.  We're not asking for a certain
14    amount of money damages in that other case.
15            We talk about standing, extraterritorial, that
16    is just absolutely a misapplicaiton of how things work.
17    Defense counsel saying that this is an extra- -- there's
18    no U.S. contact, it's an extraterritorial issue taking,
19    that's just -- absolutely, 100 percent, it's a
20    misapplication of the situation here.  And, you know, to
21    say that the nuances of how the banking system works with
22    U.S. dollar transactions is -- doesn't implicate U.S.
23    jurisdiction is absurd.
24            There are lots of other statutes and
25    regulations that we have that allow for blocking of

Askan Holdings v. USA                                    8/17/2021

1    individuals and persons that have zero contact with the
2    U.S., like the Magnitsky regulations, for instance.  You
3    know, Al-Qaeda could come and get -- if they had money
4    blocked -- and get U.S. counsel and go through the system
5    and challenge that blocking.
6              You know, individuals who are sanctioned on the
7    Magnitsky regulations have access to U.S. counsel to get
8    removed from that and to get their money unblocked.  So
9    we do provide a process here, and we always have, and
10   it's well established.
11             This was business with a U.S. -- in Arizona.
12   The money went through a Turkish/U.S. correspondent bank,
13   originally to Credit Suisse, and the money went to a
14   Swiss law firm to hold it as a trustee, and the money
15   came back through the system and OFAC directed Deutsche
16   Bank to block.  The action came from OFAC here in the
17   U.S.  It did not come from overseas.  It was not because
18   of bank software.  That is not what happened here.  It
19   was not a misunderstanding of a name or something like
20   that.  That would have been a different type of trigger.
21   That is not what happened here.
22             So this is a -- and, yes, we do say our client
23   is innocent here, but, you know, that doesn't take away
24   from the harm and this being a takings claim.  So what I
25   would like to also hit here is that, you know, he says

Askan Holdings v. USA                                    8/17/2021

1    that the economic impact isn't severe.  Like I said
2    earlier, the company went bankrupt.  It was almost
3    instantaneous.  They could not do any business because
4    they did not know who was the bad actor.  There was no
5    published SDN.
6            They did -- hired multiple law firms.  The
7    Swiss law firm could not -- also could not find any SDN.
8    They paid for due diligence, attempted to find out.  The
9    whole four years, they could not do any further business
10   until they knew what was wrong because they would have
11   run [brief audio lapse] with the money being blocked
12   again, or worse potentially.
13           So without giving -- being given that
14   information and the money being blocked, there was
15   nothing further that they could do.  Everyone in that
16   transaction could not act any further for this company to
17   expand or progress on this business.  They couldn't
18   purchase another plane.  You know, the money's blocked.
19   They couldn't get further financing.  They lost all their
20   licenses.  You know, and they couldn't -- they couldn't
21   operate.
22           It was imperative at the start of this business
23   to find out what was going on.  That money was seed
24   money.  It was a deposit for the plane.  They could have
25   gone further, and routes were necessary, many routes

Askan Holdings v. USA                                      8/17/2021

1    would have been flown with that plane.  And the money
2    that they would have earned from that plane would have
3    helped for the company to kickstart very quickly.  And
4    like I said, our client is an experienced owner of
5    another successful airline.
6           Let me see.  I want to make sure that I've hit
7    everything.  The regulatory scheme, so defense counsel
8    confuses the -- in discussing what type of -- you know,
9    is it a regulatory taking or is it -- I'm sorry -- a
10   categorical taking.  And so, you know, we don't even need
11   to get there at this point.  This is a motion to dismiss.
12   You know, we can go into that in-depth later.  We say
13   that it's a regulatory taking, but, you know, we allege
14   facts sufficient enough for it to be either of the --
15   either taking to go forward, you know, despite our
16   position here.
17          And so, you know, I think that this is
18   actually, in essence, a simple case.  It's a lot simpler
19   than defense counsel would lead the Court to believe.  We
20   have alleged facts -- pled facts enough to survive this
21   motion to dismiss, and I understand that the OFAC regs
22   can seem murky.  Now, mind you, this was never -- I want
23   to remind the Court, please, let's not get confused here
24   because defense counsel, that would be to his benefit as
25   he attempted to do, this was never a criminal action.

Askan Holdings v. USA                                    8/17/2021

1    Not all blocking by OFAC is criminal whatsoever.  That is
2    a different type of action, and so this is civil.  And it
3    has never turned into a criminal OFAC investigation.
4              THE COURT:  Where's the taking here?
5              MS. TAYLOR:  I'm sorry?
6              THE COURT:  Where is the taking here?
7              MS. TAYLOR:  The taking happened -- the initial
8    blocking with all the --
9              THE COURT:  Okay, okay.  Okay.  The Plaintiff
10   has its money back, correct?
11             MS. TAYLOR:  Not for the entire business, no.
12   The going concern --
13             THE COURT:  Excuse me, does Plaintiff have its
14   money back?
15             MS. TAYLOR:  Only for the deposit of the plane.
16             THE COURT:  Well, how much -- what else did --
17   what else got blocked?
18             MS. TAYLOR:  The whole going concern of the
19   business was taken, and that's what's at issue here.  As
20   part of the takings clause, the going concern of the
21   business is what was taken, not just the money.  And I
22   understand that this may be a case in some respects of
23   first impression here because you've not had a case
24   before with OFAC money like this, and so not -- you know,
25   the entirety of the business was what I mentioned before

Askan Holdings v. USA                                      8/17/2021

1    -- the operating rights, the landing rights, the parking

2    rights, the slots.  That is all extremely expensive.  The

3    whole price of purchasing other planes going forward, all

4    of that was gone.  The company went bankrupt.  It could

5    not move.  It was hijacked by the initial blocking, over

6    the course of four years.  And mind you, there was not

7    one fact that changed --

8              THE COURT:  Can you cite me a case -- Ms.

9    Taylor, stop when I start asking a question, please.

10             MS. TAYLOR:  Yes.  Yes, Your Honor.

11             THE COURT:  Can you cite me a case that allows

12   for the recovery of consequential damages in a takings

13   claim?

14             MS. TAYLOR:  I didn't -- we're not alleging

15   consequential damages.  We're alleging that the going

16   concern of the business existed at the time that the

17   money was taken and blocked.

18             THE COURT:  Well, the Government blocked

19   $900,000 and change, correct?

20             MS. TAYLOR:  Yes.

21             THE COURT:  The Plaintiff has that money back

22   with interest, correct?

23             MS. TAYLOR:  Yes.

24             THE COURT:  And yet now you are asserting that

25   what the Government really blocked was not 900,000 and

Askan Holdings v. USA                                    8/17/2021

1   change but it blocked the entire business from conducting

2   business?

3            MS. TAYLOR:  Yes, and I'd like to refer you to

4   Kimball Laundry, and that's what we rely on.  And, yes,

5   it's the same exact situation as Kimball Laundry.

6            THE COURT:  Okay.  Okay, understood.

7            Under the Supreme Court's test to maintain --

8   for a foreign party to maintain standing to pursue a

9   claim under the Fifth Amendment, is it sufficient, as you

10  read the governing case law for the alleged connection to

11  the United States to arise from the very transaction that

12  gives -- that produces the alleged taking, or must there

13  be preexisting substantial ties to the United States?

14           MS. TAYLOR:  One moment, Your Honor.

15           THE COURT:  If you don't understand the

16  question, I will ask --

17           MS. TAYLOR:  No, I'm sorry --

18           THE COURT:  -- I'm happy to repeat it.

19           MS. TAYLOR:  No, thank you.  I'm just digesting

20  it.

21           You know, I think either way this happened in

22  the U.S.  There was substantial context before.  At the

23  time of the initial --

24           THE COURT:  Okay, what -- okay, what is the

25  substantial contact before?

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Askan Holdings v. USA                                    8/17/2021

1          MS. TAYLOR:  Dealing with JetPro in Arizona,
2   the company that they were working with.
3          THE COURT:  But that's the transaction that
4   gives rise to the alleged taking; is it not?
5          MS. TAYLOR:  No.  It's not.
6          THE COURT:  What gives rise to the alleged
7   taking?
8          MS. TAYLOR:  The transfer of the money through
9   the -- through New York with U.S. correspondent banks.
10          THE COURT:  Yes, but --
11          MS. TAYLOR:  This is in U.S. dollars.
12          THE COURT:  -- that money -- that money only
13   gets transferred through New York because the transaction
14   with JetPro failed, correct?
15          MS. TAYLOR:  Your Honor, that's how all U.S.
16   dollar transactions -- that's how all the blocking
17   happens.  So that means that there would never be a
18   blocking case ever; there could be a takings case.  But
19   that is -- OFAC blocked this.  OFAC here in the United
20   States directed Deutsche Bank to --
21          THE COURT:  Well, I understand that.  No, no,
22   understand that, Ms. Taylor.  I read the briefs.  I
23   read the complaint.  I understand what happened.  I
24   understand what is alleged to have happened.  I'm not --
25   if we get -- if we ever get to a trial, that can be

Askan Holdings v. USA                                    8/17/2021

1    proven.  The Plaintiff enters a deal with JetPro to
2    acquire an Airbus A320.  That transaction does not come
3    to fruition, but as part of that transaction, the
4    Plaintiff puts money in escrow to acquire the plane.
5    That's -- that's the transaction that gives rise to the
6    taking.
7                MS. TAYLOR:  No, the --
8                THE COURT:  And my --
9                MS. TAYLOR:  -- sorry, Your Honor.
10               THE COURT:  -- my question is under Verdugo-
11   Urquidez, does the substantial contact with the United
12   States have to preexist the alleged taking, or can it
13   arise from the transaction that produces the alleged
14   taking?
15               MS. TAYLOR:  I would say it has to be before,
16   and in this situation, we have the transactions that --
17   you know, there are many -- I could say there are many
18   situations here.  Remember, Askan did this voluntarily.
19   There are many situations here that existed before the
20   blocking with contacts with the U.S.
21               THE COURT:  And what are they?
22               MS. TAYLOR:  Business.  Askan voluntarily used
23   a U.S. company to negotiate purchase of this plane,
24   voluntarily did it in U.S. dollars, voluntarily requests
25   that the money be put in the trust holding U.S. dollars

Askan Holdings v. USA                                    8/17/2021

1    for this deal.  And the -- Askan to after that --

2              THE COURT:  Okay, Ms. Taylor, can something be

3    -- can somebody do something voluntarily without

4    knowledge?  You're on mute, I think.  I cannot hear you.

5              MS. TAYLOR:  I'm sorry, Your Honor.

6              THE COURT:  Can somebody do something

7    voluntarily and not have knowledge?

8              MS. TAYLOR:  Can you explain a little bit more,

9    Your Honor?

10             THE COURT:  Yes.  So the test to have

11   jurisdiction over this alleged taking, the test requires

12   substantial voluntary contacts with the United States by

13   the foreign company, that is, the Plaintiff.  I have no

14   doubt that the Plaintiff voluntarily requested the return

15   of its escrow deposit minus Froriep's fee.  I don't know

16   if I'm saying Froriep correctly.  And in the course of --

17   in the course of that -- of the escrow being refunded to

18   the Plaintiff, the transfer touched the United States.

19   It came through the United States, presumably because it

20   was denominated in dollars.

21             Does Askan have to have had knowledge that the

22   transfer would come through the United States in order to

23   have behaved voluntarily such as to comply with the

24   Supreme Court's test of establishing the voluntary

25   substantial contacts?

1           MS. TAYLOR:  Your Honor, I have a couple of
2    comments in response to that, one, that this deal was
3    specifically done with a U.S. company.  Askan had
4    knowledge of it, specifically engaged in a business deal
5    to purchase a plane with a company in Arizona.  They knew
6    what they were doing.  They had substantial knowledge of
7    that.  They chose voluntarily to do the deal in U.S.
8    dollars.  They chose voluntarily to put the money in
9    escrow from their U.S. dollar account.

10          They were -- they had the option to purchase
11   planes from other individuals.  They -- you know, they're
12   sophisticated actors with lots of other businesses, I
13   would say, and I believe my client would absolutely say
14   that they knew what they were doing and they -- they
15   sought out this company in Arizona as the best company to
16   purchase this plane from and absolutely with all
17   knowledge that this deal in U.S. dollars with -- knowing
18   that -- full well that they were sought out to do their
19   due diligence, of which they did, and do their compliance
20   work concerning the deal with this plane coming from a
21   U.S. company, U -- I'm pretty sure it was a U.S. plane,
22   but I can verify that, with U.S. dollars.

23          And I would say that they knew darn well that
24   they had to comply with U.S. banking regulations, and
25   they did their very best and spent money to do so.  They

Askan Holdings v. USA                                   8/17/2021

1    sought out this company here in the U.S.  That was their

2    choice, and they voluntarily did that, and they are a

3    sophisticated actor, like I said.  They own another

4    airline.

5              THE COURT:  So the transaction with the U.S.

6    company, JetPro, is part and parcel of the transaction

7    that produces the taking?

8              MS. TAYLOR:  Absolutely.

9              THE COURT:  Okay.  I'm hearing something

10   different than I heard from you before.

11             MS. TAYLOR:  My apologies.

12             THE COURT:  Okay.

13             MS. TAYLOR:  Stand a little bit better now.

14             THE COURT:  Ms. Taylor, Count 1 of your

15   original complaint in this Court, by which I have to

16   evaluate the Defendant's motion under Section 1500,

17   includes two counts, correct?

18             MS. TAYLOR:  Yes.

19             THE COURT:  Count 1 is entitled Takings Clause

20   Violation, correct?

21             MS. TAYLOR:  I have to look at that.  I'm sure

22   that that is correct, if you can give me one second.  I

23   can put it --

24             THE COURT:  Of course.  Page 9 of your original

25   complaint.

Askan Holdings v. USA                                    8/17/2021

1               MS. TAYLOR:  Yes.  Takings Clause Violation.
2      Thank you.
3               THE COURT:  Okay.  Paragraph 37 of your
4      complaint, that complaint, you cite the due process
5      clause of the Fifth Amendment, correct?
6               MS. TAYLOR:  Yes, that's what I see, Your
7      Honor.
8               THE COURT:  Paragraph 38 of the complaint, you
9      cite the Fifth Amendment due process clause, correct?
10              MS. TAYLOR:  Yes, Your Honor.
11              THE COURT:  Paragraph 39, you cite the Fifth
12     Amendment due process clause, correct?
13              MS. TAYLOR:  Yes, Your Honor.
14              THE COURT:  Paragraph 41, OFAC's conduct in
15     violation of Askan's due process rights, correct?
16              MS. TAYLOR:  Yes, Your Honor.
17              THE COURT:  Where do you cite the Fifth
18     Amendment takings clause in that -- in that first count
19     of your complaint, other than the title?
20              MS. TAYLOR:  I'd have to go back through it,
21     but I'm not challenging there -- this is why we've
22     attempted to fix drafting errors with our amended
23     complaint, and I have to say, it does not take away from
24     our -- what we have discussed in our -- Plaintiff's --
25     and that is why we submitted the amended complaint.

1          THE COURT:  The problem -- no, it doesn't take
2     away from what you have discussed on the merits, but the
3     problem is it sure looks a heck of a lot like the
4     allegations that you presented several months previously
5     in the United States District Court.  And Congress,
6     whether it makes sense or not -- and I'm not here to
7     argue the text in 1500 is sensible policy, but it's the
8     law.  And my job is not -- my old job, when I worked for
9     20 years on Capitol Hill was to go through the law and
10    try to figure out what needs to be changed or if somebody
11    brought something to my attention that this doesn't make
12    sense and I could go through and draft a bill and take it
13    to my principal, the senators I worked for, the
14    congressmen for whom I worked, and I'd say we need to
15    change the law.  I don't have that ability anymore, once
16    I accepted this appointment.
17          So Congress, in its -- as we like to say -- its
18    infinite wisdom, back in 1868 says if there's a suit
19    pending in some other federal court, you can't bring a
20    claim for monetary damages in the Court of Claims, what
21    was then the Court of Claims.  So I don't go through
22    Count 1 of your initial complaint -- I'm not going
23    through it as an exercise trying to play gotcha, but I'm
24    looking at it, I'm looking at your District Court
25    complaint, of which I may take judicial notice and, of

Askan Holdings v. USA                                        8/17/2021

1    course, the Government appended it to its motion, but

2    they -- the two sure look as if they're predicated on the

3    same set of operative facts, do they not?

4              MS. TAYLOR:  Your Honor, we used the amended

5    complaint to inform of the 1500 analysis, and, you know,

6    we admit that there were drafting errors, and we tried to

7    clarify the operative facts down -- all of the facts are

8    put in there, but as background facts, yes, but we -- you

9    know, the operative facts are different.  We could parse

10   out the operative facts of the original complaint, and

11   that's what we tried to do with the amended complaint.

12             THE COURT:  Yeah, but, Ms. Taylor, I've got to

13   look at your original complaint in determining whether

14   under -- whether jurisdiction exists under 1500, not your

15   amended complaint.  The Federal Circuit has made that

16   crystal clear.  If my hands weren't tied, I hear you.

17   Your amended complaint is -- aside from its pagination,

18   it's much cleaner, but --

19             MS. TAYLOR:  Yes.

20             THE COURT:  -- if we overcome the Section 1500

21   issue, I can -- your amended complaint is what controls

22   the action.  Let me go to Count 2 of your original

23   complaint.

24             MS. TAYLOR:  Your Honor, I hate to interrupt,

25   but --

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Askan Holdings v. USA                                    8/17/2021

1            THE COURT:  Yes.

2            MS. TAYLOR:  -- don't -- my apologies, but can

3    I just make one comment before we go to Count 2 on that?

4            THE COURT:  Please.  Yes.

5            MS. TAYLOR:  I'd like to point out that our

6    operative facts for the takings claim are still in the

7    original complaint.  They are also in there.

8            THE COURT:  That is absolutely true, Ms.

9    Taylor.  The problem is that as alleged in the original

10   complaint, those operative facts support a due process

11   claim, not a takings claim, because other than the title,

12   there is no takings claim, and you made a due process

13   claim in the District Court.  So the operative facts are

14   there, but they support identical claims in both courts,

15   do they not?

16           MS. TAYLOR:  The same operative facts go to

17   support the taking -- the same operative facts that we

18   pulled out to fix the drafting errors that we pulled out

19   to use the amended complaint are also in the original

20   complaint and go to support the takings clause, the

21   takings --

22           THE COURT:  That is correct.  Where do I have a

23   takings claim in Count 1 of your original complaint?

24           MS. TAYLOR:  Your Honor, the -- I just want to

25   repeat what I said, the operative facts are still in

Askan Holdings v. USA                                    8/17/2021

1   there.  The original complaint --

2              THE COURT:  But the operative facts --

3              MS. TAYLOR:  -- has all of the facts, has all

4   of the facts, and I under- -- I understand, you know, I

5   hear you, but this is -- yes, I'm sorry.

6              THE COURT:  Does that not demonstrate, Ms.

7   Taylor, that as your argument proves, does it not, the

8   operative facts exist in your original complaint to

9   support both a takings claim, as you allege in your

10  amended complaint, and to support a due process claim, as

11  you allege in your original complaint --

12             MS. TAYLOR:  No.

13             THE COURT:  -- I think the operative --

14             MS. TAYLOR:  I'm sorry, Your Honor.

15             THE COURT:  -- facts are identical in the

16  District Court and here.  You just -- you just told me

17  that.

18             MS. TAYLOR:  Yeah, but that was -- I'm sorry,

19  but I need --

20             THE COURT:  (Inaudible) it come out of your

21  mouth.

22             MS. TAYLOR:  Well, I'm sorry, then I need to

23  clarify, Your Honor, here.

24             THE COURT:  Yeah, you do need to clarify.

25             MS. TAYLOR:  Yes, and I'm going to go back to

Askan Holdings v. USA                                          8/17/2021

1    the fact that too many operative facts were alleged in
2    the original complaint, and that was an error, and that's
3    why we submitted the amended complaint here.  You know, I
4    would say, no, the operative facts, as we discussed and
5    that are in the amended complaint, are -- the operative
6    facts of the takings claim are distinct from the other
7    case, and we do not have those facts detailed out or
8    discussed in the way in the District Court case that we
9    have here.  They are distinct.
10              THE COURT:  Do you --
11              MS. TAYLOR:  The nature of the prior case is
12   such that it is not the same as this.  The very nature of
13   the prior case was an injunction.  It started as an
14   injunction and expanded upon events that happened during
15   that case.
16              THE COURT:  Well, let --
17              MS. TAYLOR:  As was here --
18              THE COURT:  -- me ask you.  Let me go back.  Do
19   you accept my initial statement that I must evaluate my
20   jurisdiction under Section 1500 as of the date you filed
21   your original complaint and not your amended complaint?
22              MS. TAYLOR:  I would say under these
23   circumstances, I would say that, you know, we had too
24   many facts in the original complaint and I think that
25   with the amended complaint, it provides insight into the

Askan Holdings v. USA                                        8/17/2021

1    original complaint.  So, therefore, with that insight, I

2    think that it very well and justly can survive 1500.  And

3    I think that that would be the intent and purpose here.

4         The intent and purpose would not be to just

5    block outright because of drafting errors, and I think

6    that that doesn't serve anybody justice ever and they're

7    not what the courts or Congress are seeking to do.  And I

8    understand what Your Honor is saying about how it is

9    drafted, but, you know, this is not a situation where,

10   you know, there weren't too many operative facts put in

11   the original complaint, and, you know, there were some

12   drafting errors, but, you know, everything is well pled

13   within the body of the amended complaint.  You have

14   insight into the original complaint.  It is not, you

15   know, a game here.  They're all legitimate claims.

16        THE COURT:  Okay.  I don't have any further

17   questions.  Go ahead.  Do you have anything else, Ms.

18   Taylor?  And, of course, I'll give you an opportunity to

19   rebut anything Mr. Yale says in response.

20        MS. TAYLOR:  Not at this time, Your Honor.

21        THE COURT:  Okay.  Thank you, Ms. Taylor.  Let

22   me ask you to mute yourself again, and I'll turn back to

23   Mr. Yale.

24        Mr. Yale, and this time I will feel free to ask

25   questions from the getgo, so you don't get a period of --

Askan Holdings v. USA                                    8/17/2021

1    where you can chatter without my asking questions, but

2    please proceed.

3            MR. YALE:  Fair enough, Your Honor.  Just a

4    couple of points.  On the 1500 issue, with the amended

5    complaint, it's just not relevant.  So, I mean, that's

6    black letter law.  The other point, the fact that there

7    was an injunction in the District Court, that's

8    irrelevant, and that's Tohono, that's the Supreme Court,

9    that argument is just meritless.

10           Just a couple of other points.  On the

11   constitutional standing, you know, the language from

12   Verdugo is pretty clear.  There has to be a "free

13   existing, voluntary connection."  So, you know, it has to

14   occur -- it can't be a part of the transaction, which is

15   the taking.  And so -- but that's not just the Supreme

16   Court there.  I mean, there's other -- you know, that's

17   essentially what the Federal Circuit said in that

18   Uzbekistan case that, you know, the taking itself cannot

19   be the basis for the substantial connection.  And there's

20   two, you know --

21           THE COURT:  Right, but here Ms. Taylor is

22   saying, look, we do have a substantial connection.  We

23   have -- the Plaintiff has engaged in a course of conduct

24   with JetPro to acquire a plane.  They're negotiating the

25   purchase and the sale.  That's the substantial voluntary

Askan Holdings v. USA                                    8/17/2021

1    contact with the United States, with a U.S.-based company
2    to acquire -- we don't know where the plane was.  It
3    doesn't matter where the plane is.  But the plane is
4    owned by this JetPro, which I assume is some kind of
5    broker, that I presume buys used planes from airlines and
6    resells them to other airlines.
7              Askan reaches out to Jet pro.  They negotiate
8    the purchase of a JetPro-owned airplane.  They come to
9    terms, at least I assume they come to terms.  They --
10   Askan puts money in escrow, you know, good faith purchase
11   money.  As they're going to closing, whatever happens,
12   the deal falls apart.  Maybe, you know, on inspection,
13   the plane wasn't in good shape or we don't know.  The
14   facts aren't alleged; it doesn't matter.  But that's the
15   first substantial voluntary transaction that the
16   Plaintiff has with the United States.
17             Then they ask for the money back, and there's
18   then a second transaction, which crosses -- I mean, these
19   things are all done by wire, right?  Nobody's actually
20   counting money across the borders, but they're sending
21   money, and, again, presumably because it was denominated
22   in dollars, which the Plaintiff voluntary undertook to
23   do, purchase a plane in the United States to be paid for
24   in currency denominated in dollars, because it's
25   denominated in dollars, the transaction is transmitted

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Askan Holdings v. USA                                    8/17/2021

1      through New York.  And, there, OFAC said, oop, we got you

2      now.  But that's a second -- that's a second transaction

3      as the Plaintiff has it.

4              And the first transaction is the attempted

5      acquisition of the plane by JetPro.  Why doesn't that

6      satisfy the Verdugo-Urquidez test?

7              MR. YALE:  Well, with all due respect, I think

8      that's -- it's all part of the same deal.  The reason why

9      they're getting the payment returned is it's all arising

10     out of the same transaction.  Presumably, it's because

11     they had a right to get back the deposit.  And I think

12     it's, you know, parallel to the Plot- -- the Plotkin

13     Construction case, where, you know, when this Court was

14     going through the fact that there needed to be a

15     preexisting voluntary connection, it's setting aside the

16     actual course -- that course of conduct with -- between

17     the subcontractor in that case and the United States.

18     And what they're really pointing to are these other --

19     these other contracts with the United States.

20             And the other thing is there's no case where a

21     single transaction with a U.S. company is sufficient for

22     constitutional standing.  I think opposing counsel as

23     mentioning that, well, because OFAC was blocking this,

24     because it's a block, then anyone would have -- I think

25     she mentioned Al-Qaeda would be able to have standing to

1    come in here.  Now, we're talking about his

2    constitutional standing.  We're not talking about whether

3    or not somebody could go into the District Court or

4    whatnot on some other -- on some other claim.  I mean, I

5    think we would contest that Al-Qaeda would have

6    constitutional standing for -- to raise something like

7    this.  And so we think that under Verdugo that that's

8    just plainly --

9             THE COURT:  Mr. Yale, you don't think 9/11 was

10   a substantial voluntary contact with the United States?

11            That's a joke, sir --

12            MR. YALE:  Well, I --

13            THE COURT:  I guess that's legal opinion --

14            MR. YALE:  I'm not going to touch that one,

15   Your Honor, but I understand what you're saying.

16            THE COURT:  No, I take your point, but, again,

17   the challenging -- challenging one's presence on the list

18   is a District Court, it's an APA claim, not a claim for

19   money damages here.

20            MR. YALE:  Yeah, there's no -- there's no

21   claim here for that, Your Honor.  That's correct.

22            THE COURT:  Mr. Yale, let me ask you a

23   question, and I will let you return to the points you

24   want to make, but -- well, I guess, let me -- I'll let

25   you go on, but let me ask you to make sure that at some

Askan Holdings v. USA                                        8/17/2021

1    point in your response you address the Plaintiff's

2    claim, which I must confess, Ms. Taylor, I don't think I

3    quite clearly understood until I heard your argument,

4    that what the Plaintiff is alleging here as the taking is

5    not simply the blocking of the funds but it is -- it is

6    the -- the taking of the entire business, it arises from

7    the blocking of the funds.

8            And I'd like you, at least at some point, Mr.

9    Yale, to tackle that in the course of your response, but

10   rather than asking you to deal with that head on now,

11   I'll let you go back on the path you wanted to address,

12   as long as you -- as long as I hear your answer on that

13   point at some point in your response.

14           MR. YALE:  That's fine, Your Honor.  I mean,

15   I'll just address that right now.  So, I mean, Kimball

16   Laundry is the case that they cited.  Again, in Kimball

17   Laundry, the United States went in and they physically

18   seized an entire laundry business.  So what was being

19   seized was a business.  In this case, there's no

20   allegation that we went and, you know, took, you know,

21   this business wherever it was located and continued to

22   operate it.

23           In Kimball Laundry, I mean, they were -- the

24   U.S. Government was actually operating this laundry

25   business.  And for something like a business, there can

Askan Holdings v. USA                                    8/17/2021

1    be going concern value.  I mean, we pointed to cases,

2    including I think it's the Yuba case from the Federal

3    Circuit that addressed that very -- that very thing, that

4    it's money.  Money doesn't have going concern value.

5              I mean, you have to -- under the takings

6    clause, you have to look at the particular property

7    interest involved.  And so when a laundry business is

8    seized, that's different from when, you know, there's

9    some allegation with respect to funds.  So that's just --

10   I mean, that -- and, you know, the other points about --

11   I'm now hearing something about landing rights --

12             THE COURT:  So you're arguing -- your rebuttal,

13   Mr. Yale, is effectively that what the Plaintiff is

14   seeking is, in fact, consequential damages from --

15             MR. YALE:  It's at best consequential damages,

16   Your Honor.  I would even suspect that something

17   involving, you know, the bankruptcy of a parent company,

18   I'm not even -- I mean, I don't really even see how that

19   rises even to the level of consequential damages, but at

20   best, it's consequential damages.  I mean, if -- if the

21   property interest that's being alleged to be taken is,

22   you know, $30 or $30 million, it's -- that's what's being

23   taken.  It's the money.  And so it's not these other

24   things.

25             Otherwise, if, for example, the Government were

Askan Holdings v. USA                                          8/17/2021

```
 1    ever found to have, you know, engaged in a taking of $10
 2    and that was used -- without that $10 somebody would have
 3    won the lottery or invested in Apple stock or whatnot,
 4    but that's just -- that's just not the rule.  I mean,
 5    it's -- there's a bar on seeking consequential damages.
 6    You can at best get what was taken.  And so, you know, we
 7    think that's pretty straightforward and pretty black
 8    letter law.
 9            You know, again, I was just mentioning there
10    were some other interests -- landing rights and whatnot,
11    some other contracts.  You know, again, that's -- I mean,
12    they're not -- landing rights, just not -- slots,
13    whatever that was, it's not actually alleged in the
14    complaint.  Again, what was blocked here was this money,
15    and so that's the property interest the Court has to
16    focus on.
17            And I think with that, Your Honor, I don't
18    think I have anything further.
19            THE COURT:  Okay.  Thank you, Mr. Yale.  I'll
20    give you a chance if you have further rebuttal to Ms.
21    Taylor's next round.  I will give you another opportunity
22    to present that, but let me ask you to mute yourself, and
23    let me return to Ms. Taylor.
24            Ms. Taylor, the floor is yours.  Please feel
25    free to address any point you would like, either from any
```

Askan Holdings v. USA                                    8/17/2021

1    previous questions I raised or in rebuttal to the
2    arguments that Mr. Yale just presented.
3         MS. TAYLOR:  Yes, thank you, Your Honor.  So,
4    you know, I'd like to go back to the purpose of 1500
5    originally.  It was the Civil War.  There were all these
6    cases being brought by cotton claimants, and they were
7    bringing exactly the same case for the same damages.
8    That is not the case here, even looking at the District
9    Court case.  We do not ask for damages.  We do not ask
10   for the going concern of the business.  It was a
11   different type of case.
12        And so I'd like -- you know, justice here, it
13   is not just a matter of looking within the black letter
14   of the law here so narrowly that the case that somehow is
15   not perfectly within what has been brought before
16   because, of course, as we all know, there are cases
17   brought that are different all the time and that still
18   are within the purview of the Court, whichever court that
19   may be, whatever the issues may be, and this is one of
20   them.  This is OFAC.  We have not had a situation -- OFAC
21   blocks money.  They have not had a takings case like this
22   before involving OFAC.
23        And so, you know, the property is money.  It
24   took the entire business.  It is the going concern, just
25   like in Kimball Laundry.  Justice would not be served

Askan Holdings v. USA                                    8/17/2021

1    here in splicing hairs to say that it was only money and
2    the deposit of the plane and, therefore, whatever else
3    happened, we're trying to discredit the value and the
4    immense expense and the hurdle and the difficulty in
5    getting slots, which are very expensive, and getting
6    landing rights, parking rights, and starting an airline
7    business, negotiating for the purchase of this plane,
8    which the plane then needs to start operating and going
9    forward.  There is no justice served here in discrediting
10   this whatsoever, which is what defense counsel is trying
11   to do here.  And it's not fair to do so.
12            You know, there are no consequential damages
13   here.  A claim against OFAC to allege that -- or not to
14   allege, to state and assert that the only type of damages
15   that could ever be sought in an OFAC case would be
16   consequential damages in a situation like this, it was
17   just clearings a takings claim, is absurd.  And, you
18   know, I would say the intent and purpose here, you know,
19   of providing full and perfect equivalent compensation in
20   takings cases, and that is exactly what is entitled our
21   client here.  And, you know, there was no -- yeah, mind
22   you, facts never changed from -- and at all -- from the
23   time of the original taking through for four years, okay?
24            Our client was never -- please, I want to
25   remind you -- was never on any list.  There was never

Askan Holdings v. USA                                    8/17/2021

1    anybody in the transaction on any list.  Lists have to be
2    public.  And there was no SDGT ever taken off during the
3    time period between when the money got -- was released by
4    OFAC sua sponte, which mind you, has never happened
5    before.  OFAC doesn't give back money on a sua sponte
6    basis without an application being filed.
7           So, you know, the time period of four years
8    here, an indefinite amount of time for when they might
9    get their money, does equal a permanent taking here.  The
10   harm is severe.  It is adequate.  We are talking about a
11   motion to dismiss.  We have properly pled our claims.
12   You know, and the purpose here is met under 1500.  We are
13   not bringing the same case.  We are not asking for the
14   same remedy.  We are not using the same operative facts
15   here, and that is -- that is what's key.  We are not
16   going forward here on a case that is identical with the
17   same facts as -- and what we're seeking.  We are not
18   seeking the same [brief audio lapse] prior case.
19          THE COURT:  Ms. Taylor, hasn't the Supreme
20   Court told us that it doesn't matter, it is irrelevant
21   that you're not seeking the same relief?
22          MS. TAYLOR:  I would say the purpose behind --
23          THE COURT:  And that's exactly what Tohono
24   stands for.
25          MS. TAYLOR:  So --

Askan Holdings v. USA                                    8/17/2021

1          THE COURT:  Tohono says it doesn't matter if
2    you're not seeking the same relief.
3          MS. TAYLOR:  We're not using the same operative
4    facts here.  You know, so the purpose of 1500 is met in
5    this case.  This case, in reality, is -- operates off of
6    different -- uses different operative facts.  It does not
7    use substantially the same facts.  It's a gigantic world
8    of fact in this case, and I understand that factually it
9    can -- it can easily be confusing, but, here, we -- this
10   is a legitimate case, legitimately under 1500,
11   legitimately seeking -- using different operative facts
12   from a different transaction which was the original
13   blocking, the whole business being gone.
14          And, you know, just like Kimball Laundry, all
15   of these other rights and clients and licenses do mean
16   something.  It doesn't have to be identical to a laundry
17   for that case to apply.  We all know that.  So let's not
18   get confused here with that.  And I understand that this
19   is an OFAC case which is a different type of takings case
20   that has not come before the Court before, but it is 100
21   percent a legitimate takings case with legitimate claims,
22   with a client who has done nothing here -- nothing wrong.
23          There was no -- there's no SDN, SDGT.  No one
24   in this transaction was ever involved in any of this.
25   Substantial U.S. context, to try to say that the whole

Askan Holdings v. USA                                    8/17/2021

1   business deal with a U.S. company that is selling them a

2   plane is not substantial contact -- context is -- you

3   know, previous to the taking, is, you know, is against

4   the U.S. interest in having businesses, you know, seeking

5   out -- I'm sorry, to do business with U.S. businesses.

6   It's against our interest, and it's not the purpose of

7   the blocking provisions.

8            And so let's not get confused here.  DOJ is

9   definitely trying to confuse the issue here and act like

10  it's one of, you know, potential criminal, you know,

11  scary situation involving terrorists.  That's not what

12  happened here.  Nobody's on any list.  Nobody was ever

13  published.  You have to be published to be on an S -- to

14  be an SDN.  That's the way it works.  And they don't

15  unblock money during an investigation because they don't

16  want to tip off whoever it might be.  That is not how it

17  works.

18           And so, you know, I have to say that this is

19  definitely, 100 percent a case that comports with the

20  purpose of the jurisdiction of this Court.  It is a

21  different type of case, different than the prior one -- I

22  mean than the other court case, different facts,

23  different relief -- different -- it is 100 percent

24  distinguishable from the other case as we discussed.

25           This is not just black letter in a vacuum.  To

Askan Holdings v. USA                                    8/17/2021

1   use black letter just to throw out this case is not, you
2   know, the purpose of the jurisdiction of this Court.
3           THE COURT:  Ms. Taylor, I'm a trial court.  My
4   job is to apply the black letter law.  The black letter
5   law is a problem, that's a job for the Court of Appeals
6   or the Supreme Court.  Do you have anything further?
7           MS. TAYLOR:  Well, like I said, looking at the
8   black letter law, you also look at the purpose of what
9   you're applying, and I believe that the purpose of 1500
10  is so that you don't bring the same cases.  And as we've
11  discussed in the -- looking at everything in the totality
12  of the situation here -- different facts, like I said
13  many times -- this is not the same case, and it comports
14  with 1500 looking at that.  The purpose of 1500 --
15          THE COURT:  The problem, Ms. Taylor, is
16  (inaudible) --
17          MS. TAYLOR:  -- is to throw out identical
18  cases.
19          THE COURT:  You've said that multiple times,
20  but a reading of your complaint -- your original
21  complaint here, which is all I can look at, not your
22  amended complaint, and a reading of your District Court
23  amended complaint belies what you've said here.  It
24  undercuts what you've said here.
25          MS. TAYLOR:  I think I addressed that --

Askan Holdings v. USA                                    8/17/2021

1          THE COURT:  They're not different facts.
2   They're the same claims.
3          MS. TAYLOR:  So the -- that includes more
4   operative facts and from the other case, but we carve out
5   the operative facts as we do with -- as I stated with the
6   amended complaint.
7          THE COURT:  Which I can't look at.
8          MS. TAYLOR:  I think I responded earlier
9   that --
10          THE COURT:  You did, but the Federal Circuit
11   disagrees with you.
12          MS. TAYLOR:  Okay.  You know, Judge, Your
13   Honor, with all due respect, I think that this is within
14   the intent and purpose.  It is within 1500, and I
15   understand what you're saying, but I think that there is
16   room 100 percent for this case.  It is a different case,
17   and the entire complaint doesn't need to be read to carve
18   out, you know, the facts here.  And I think that, you
19   know, the primary -- I mean, the substantial operative
20   facts here are all in the complaint, the original
21   complaint.  There was more operative facts in there than
22   what needed to be included.  And like I said, we
23   clarified with the amended complaint.
24          And, yes, it was poorly drafted, which is why
25   we filed an amended complaint, and I have to say but it

Askan Holdings v. USA                                    8/17/2021

1    doesn't take away from it being within the purpose of

2    1500, and this is not the same case, and we've

3    established that on our record.  This is not suddenly

4    going to be a case that changes and becomes a different

5    case.  We're not going to suddenly, if we go forward,

6    beyond and survive the motion to dismiss, this is not a

7    situation where we're suddenly going to bring in all the

8    same facts and turn it into the same case.  Absolutely

9    not.  We've been very forthright with the Court here.

10             THE COURT:  I have not questioned that.

11             MS. TAYLOR:  No, I know.

12             THE COURT:  I appreciate that, Ms. Taylor.  No,

13   I say, I understand your argument and again, I fully

14   appreciate that Section 1500 has been subject to strong

15   criticism from the Supreme Court on down.  Whether its

16   purpose is -- remains useful or not is questioned by --

17   has been questioned by a number of my colleagues, as well

18   as higher courts, and I promise you it is something I

19   will take a very close look at when I -- when I repair to

20   my chambers after this argument.

21             Do you have anything further, Ms. Taylor, at

22   this point?

23             MS. TAYLOR:  No, Your Honor.  Thank you very

24   much.

25             THE COURT:  Mr. Yale, anything further, from

Askan Holdings v. USA                                    8/17/2021

1    the Government?

2              MR. YALE:  No, Your Honor.

3              THE COURT:  Okay, thank you.

4              Counsel, thank you both very much for your --

5    for the high-quality briefing that presented the case

6    extremely well in preparation for this argument.  It made

7    my preparation for the argument easier than sometimes it

8    has been.  I have to say, I didn't stumble on relevant

9    cases that were not cited by either party, so for that I

10   thank you, and thank you both for your capable and, Ms.

11   Taylor, impassioned argument this morning, and I should

12   emphasize, appropriately impassioned.

13             I don't want to leave -- I do not want to leave

14   any misimpression that you crossed any lines.  You did

15   not in any way, shape, or form.  You advocated on behalf

16   of your client's interests ably, and I appreciate that.

17             I will reserve judgment and will try to get an

18   opinion out expeditiously.  And obviously if I grant the

19   Defendant's motion, we'll enter judgment.  And, Ms.

20   Taylor, if I go that route, you'll be able to take me up

21   and see if you can't get clarification of the law in

22   Section 1500.  And if I deny the Government's motion,

23   then we will proceed -- we will proceed here, and I will

24   -- I will convene us for a status conference, where we

25   will try to do some scheduling going forward if we get to

Askan Holdings v. USA                                          8/17/2021

1    that.

2              But at least for today, I have nothing further,

3    so let me just -- one final opportunity.

4              Mr. Yale, anything further before I adjourn us?

5              MR. YALE:  No, Your Honor.

6              THE COURT:  Ms. Taylor -- thank you, Mr. Yale.

7              Ms. Taylor, anything further?

8              MS. TAYLOR:  No, Your Honor.  No, Your Honor.

9              THE COURT:  Okay.

10             MS. TAYLOR:  Thank you so very much.

11             THE COURT:  Thank you all very much, Counsel.

12   We stand adjourned.  Thank you.  Bye-bye.

13             (Whereupon, the hearing was adjourned at 11:54

14   a.m.)

15

16

17

18

19

20

21

22

23

24

25

67

Askan Holdings v. USA                                      8/17/2021

```
1                      CERTIFICATE OF TRANSCRIBER

2

3            I, Sara J. Vance, court-approved transcriber,

4    certify that the foregoing is a correct transcript from

5    the official electronic sound recording of the

6    proceedings in the above-titled matter.

7

8

9

10   DATE:  8/31/2021           s/Sara J. Vance

11                              SARA J. VANCE, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```